IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JORGE A. ALVAREZ, *Plaintiff*, | § § § § § § § § § | SA-18-CV-01191-XR |
| v. | | |
| STATE FARM LLOYDS, *Defendant*. | | |

## ORDER

On this day, the Court considered Defendant State Farm Lloyds' ("State Farm") Motion to Exclude the report and opinions of Plaintiff's proposed expert, Dr. Neil B. Hall (ECF No. 29), Plaintiff's Response (ECF No. 30), and State Farm's Reply (ECF No. 32).[1] After careful consideration, the Motion is DENIED.

## BACKGROUND

This case is an insurance dispute arising from Defendant State Farm's denial of coverage for a claim of damages to Plaintiff Jorge Alvarez's ("Plaintiff") home. Plaintiff claims that storms on April 25, 2016 caused hail damage to his roof, which he discovered and reported to State Farm, and that State Farm subsequently failed to fully compensate him for his covered damages. State Farm contends that its adjuster found no wind or hail damage to the roof, and that Plaintiff's losses are not covered under the applicable insurance policy. Plaintiff brings claims against State Farm for breach of contract and violations of the Texas Deceptive Trade Practices Act, the Texas Insurance Code, and the common law duty of good faith and fair dealing. As this Court has already recognized, the "central issues in this case concern whether

---

[1] Under the local rules, submissions on a motion beyond a response and reply are not allowed absent leave of court. Local Rule CV-7(f)(1). Plaintiff filed a sur-reply to State Farm's reply without requesting or being granted leave of this Court to do so. *See* ECF No. 33. Accordingly, the Court will not consider Plaintiff's Sur-Reply.

1

the storm damaged Plaintiff's roof, the extent of that damage, and whether a full roof replacement is required." ECF No. 26 at 2.

To that end, Plaintiff has designated Dr. Neil B. Hall, P.E., as a testifying expert on his behalf. Plaintiff's Expert Designation and Report indicate that Dr. Hall will testify as "to the date on which the precipitating event occurred, all issues surrounding causation, the effect of the subject storm in this matter upon the subject property, and the structural damage, both actual and consequential, that resulted from the same." Dr. Hall reaches two principal conclusions in his expert report: (1) that Plaintiff's "roof tiles most likely were damaged by impacting hail on…April 12, 2016, and April 25, 2016," and (2) "If" an undated letter from the tile manufacturer "was written after the 2010 installation" of Plaintiff's roof tiles, then "replacement tiles are not available and in order to replace the damage [sic] roof tiles it will be necessary to replace the entire roof covering."

State Farm moves this Court to exclude Dr. Hall's report and testimony as inadmissible, irrelevant, speculative, unsupported, and unreliable; unhelpful to the jury in understanding the evidence or determining a fact issue in this case; and improper, confusing, and prejudicial to State Farm. Plaintiff responds that Dr. Hall's opinions and report are reliable, based upon sufficient data, and the product of reliable principles and methods, and that his testimony is vital to proving causation, which is one of the material issues in this case.

## DISCUSSION

I. **Legal Standards**

Rule 702 of the Federal Rules of Evidence provides for the admissibility of expert testimony if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." FED. R. EVID. 702. As a preliminary matter, the Court must determine whether the

proffered witness qualifies as an expert. "Before a district court may allow a witness to testify as an expert, it must be assured that the proffered witness is qualified to testify by virtue of his 'knowledge, skill, experience, training, or education.'" *United States v. Cooks*, 589 F.3d 173, 179 (5th Cir. 2009) (quoting FED. R. EVID. 702).

If the expert is qualified, then the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) provides the analytical framework for determining the admissibility of expert testimony. *Daubert* requires the district courts to act as "gatekeepers" to ensure expert testimony meets Rule 702's standards. *Id.* at 589. This entails ensuring "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* at 597; *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) ("In short, expert testimony is admissible only if it is both relevant and reliable"). In determining the admissibility of expert testimony, the district court should approach its task "with proper deference to the jury's role as the arbiter of disputes between conflicting opinions." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987)). The party proffering expert testimony has the burden of establishing by a preponderance of the evidence that the challenged expert testimony is admissible. *Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276 (5th Cir. 1998); *see also* FED. R. EVID. 104.

The reliability inquiry entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and can be properly applied to the facts in issue. *Id.* at 592–93. In *Daubert*, the Supreme Court enumerated five nonexclusive factors to consider when assessing whether the methodology upon which an expert rests his opinion is reliable. These factors are: (1) whether the expert's theory can be or has been tested, (2) whether the theory has been subject to peer review and publication, (3) the known or potential rate of error of a technique or theory when applied, (4) the existence and maintenance

of standards and controls, and (5) the degree to which the technique or theory has been generally accepted in the scientific community. *Id.* at 593–94; *Burleson v. Tex. Dep't of Criminal Justice*, 393 F. 3d 577, 584 (5th Cir. 2004). The test for determining reliability is flexible and can adapt to the particular circumstances underlying the testimony at issue. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999). The point of this inquiry "is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.*

The relevance inquiry requires the Court to determine if expert testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." *Daubert*, 509 U.S. at 591. "Evidence is relevant if … it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." FED. R. EVID. 401.

**II. Analysis**

    a. <u>Qualification</u>

Before reaching the admissibility of Dr. Hall's report and testimony, the Court notes that he is qualified to testify as an expert. State Farm even explicitly disclaims any arguments as to Dr. Hall's qualifications. ECF No. 32 at 1 ("State Farm is not challenging Mr. Hall's credentials as a licensed architect and engineer as suggested by Plaintiff in his response to the motion; rather, State Farm is challenging the reliability of his report and opinions in this matter.") Dr. Hall is a licensed professional engineer and architect who served as a military engineer for 20 years, first with the Navy Civil Engineer Corps and then with the Army Special Forces. During his military service, Dr. Hall supervised design and construction and investigated construction

accidents. Since his honorable discharge from military service, Dr. Hall has worked almost exclusively in forensic engineering and investigations. Since 2003 he has operated his current company, Groundtruth Forensics, which specializes in "building performance, failure analysis, and damage assessment." He has experience performing forensic investigations in insurance disputes on behalf of both insurance companies and policyholders. Accordingly, the Court finds he is adequately qualified to testify as to both causation and damage assessment in this case.

    b. <u>Reliability</u>

State Farm attacks the reliability of Dr. Hall's report and testimony for the following reasons:

> a) He did not consult with anyone in the roofing industry to determine if the tile at issue was known to have similar breakage issues unrelated to hailstorms;
> b) He ruled out more common causes associated with the damage that was present;
> c) He relied on the eyewitness report of an "unidentified, volunteer weather spotter in the area" to conclude that hail fell vertically;
> d) He relied on a blemish on the crack of one tile, which he observed and photographed, as evidence of hail impact, but ignored the absence of similar blemishes on other damaged tiles;
> e) He supports his causation conclusion with a "field experiment" he conducted using a rock in a glove;
> f) His damage assessment "opines that the roof must be replaced because the roof tile may be out of production; however, he did no investigation to determine the availability of the tile," and instead relied on a letter from the manufacturer stating that the tile was no longer being made.

ECF No. 29 at 6–8. As to the reliability of Dr. Hall's opinions regarding causation, most of State Farm's attacks are not on the "reasoning or methodology underlying" Dr. Hall's testimony, but on his conclusions themselves. They do not contend, for example, that inspecting a damaged roof in person, photographing damaged tiles, examining cracks and patterns in the tiles, evaluating available weather data, or investigating available eyewitness reports of the weather in the affected area are unreliable methods for conducting a forensic investigation. They instead

5

argue that Dr. Hall should have come to a different conclusion after reviewing all of this evidence, or that he should have reviewed additional evidence such as consulting someone in the roofing industry concerning similar breakage issues on this type of tile.

It is not the Court's role to judge the conclusions that an expert's analysis generates; the ultimate arbiter of disputes between conflicting opinions is the jury. *See Daubert*, 509 U.S. at 595 ("The focus, of course, must be solely on the principles and methodology, not on the conclusions that they generate."); *Viterbo*, 826 F.2d at 422 (discussing "proper deference to the jury's role as the arbiter of disputes between conflicting opinions.")  To the extent State Farm wishes to attack the "bases and sources" of Dr. Hall's opinion, such questions "affect the weight to be assigned to that opinion rather than its admissibility" and should also "be left for the jury's consideration." *Id.* (citing *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985)). State Farm's qualms with the bases for Dr. Hall's opinions do not render the opinion so "unsupported" as to create "too great an analytical gap" between the evidence he relies on and his opinions. *Orthoflex, Inc. v. ThermoTek, Inc.*, 986 F. Supp. 2d 776, 783 (N.D. Tex. 2013).

State Farm does attack Dr. Hall's methodology in its discussion of the "rock-in-glove" experiment.  Dr. Hall states in his report that:

> I placed a small stone inside a glove and swung it to simulate a hail strike.  This was a field expedient demonstration and not a standard laboratory test.  I did not measure the kinetic energy of the impact as I was not attempting to determine the threshold size of damaging hail, rather only whether an impact load would cause "multiple irregular fractures emanating from the impact point" or straight line cracks similar to what I observed on the roof… The first induced impact did *not* cause "multiple irregular fractures emanating from the impact point" but rather a half-moon crack passing through the rusty nail… On a second test tile, I induced a spider crack (three cracks intersecting at a point) which did not pass through an un-rusted nail… I found may "spider cracks" on field and ridge tiles (which I did not induce).

State Farm argues this "field experiment" was "conducted with no scientific controls," that Dr. Hall has never performed this "experiment" during any other inspection of hail damaged roofs, that his demonstration "does not accurately recreate the circumstances surrounding the storm at issue," and that it "has no relevance to whether hail caused the damage" to Plaintiff's roof. ECF No. 29 at 7–8.

State Farm's attack fails to render Dr. Hall's testimony inadmissible, because it is an attack on an opinion he does not offer. Dr. Hall does not offer this demonstration to "accurately recreate the circumstances surrounding the storm at issue" or to conclude, on this basis alone, that the damage at issue was caused by hail. Instead, he testified that "[t]he only purpose was to show that a point impact by a concentrated load might cause a certain pattern" on the tiles. Hall Dep. 151:19–21. There is no "analytical gap" between Dr. Hall striking Plaintiff's roof tiles with a round object and concluding that a round object can cause damage patterns of a certain shape. Dr. Hall may testify about his "rock-in-glove" experiment, and State Farm may attack the weight the jury should give such a demonstration on the issue of causation.

Finally, State Farm's attack on the reliability of Dr. Hall's damage assessment also fails as an attack on an opinion that Dr. Hall does not offer. State Farm asserts that Dr. Hall "opines that the roof must be replaced because the roof tile may be out of production," based on an undated letter from the manufacturer. But Dr. Hall's report and testimony is not that Plaintiff's roof "must be replaced." Instead, his report concludes that "[i]f the letter was written after the 2010 installation" of Plaintiff's roof tiles, then "replacement tiles are not available and in order to replace the damage [sic] roof tiles it will be necessary to replace the entire roof covering." State Farm's issue is again with the basis of Dr. Hall's conclusion: his reliance on a letter from the roof tile manufacturer, instead of other evidence State Farm wishes he had relied on, such as

7

information obtained from contacting scrap yards and second-hand dealers to see if the tile is available. Dr. Hall will be permitted to testify as to his opinion on the repairs or replacement necessary for Plaintiff's roof if the tiles are no longer in production. State Farm may attack the weight of the evidence Dr. Hall relies on and/or offer additional evidence about the availability of the roof tiles to the jury, but these arguments do not affect the Court's admissibility determination.

    c. <u>Relevance</u>

State Farm also argues, in conclusory fashion, that Dr. Hall's report and testimony are "irrelevant" and would be "unhelpful to the jury in understanding the evidence or determining a fact issue in this case." ECF No. 29 at 2. State Farm does not, however, provide any reasons Dr. Hall's testimony would be irrelevant to the issues in this case; instead, its arguments focus on reliability, as discussed above. The Court finds that Dr. Hall's testimony meets the relevance threshold of the admissibility inquiry: his testimony, if believed by the jury, has a "tendency to make a fact more or less probable than it would be without" his testimony. *See* FED. R. EVID. 401. Because Dr. Hall's testimony will "assist the trier of fact" to understand the evidence and/or to determine facts regarding causation and damages in this case, it meets the relevance prong of the *Daubert* admissibility test. *Daubert*, 509 U.S. at 591.

## CONCLUSION

For the foregoing reasons, State Farm's Motion to Exclude is DENIED.

It is so ORDERED.

SIGNED this 13th day of February, 2020.

                                                  XAVIER RODRIGUEZ
                                                  UNITED STATES DISTRICT JUDGE