# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | |
|---|---|
| JORGE A. ALVAREZ, *Plaintiff*, | § § § |
| v. | § § SA-18-CV-01191-XR |
| STATE FARM LLOYDS, *Defendant*. | § § § § § |

## ORDER

On this day, the Court considered Defendant State Farm Lloyds' ("State Farm") Motion for Summary Judgment Regarding Extra-Contractual Claims (ECF No. 35), Plaintiff's Response (ECF No. 36), and State Farm's Reply (ECF No. 37).[1] For the reasons stated herein, State Farm's motion is **GRANTED**.

## BACKGROUND

Plaintiff Jorge Alvarez brings this suit against State Farm, alleging breach of contract and extra-contractual claims arising out of an insurance coverage dispute. Plaintiff claims that the clay tile roof of his home in San Antonio was damaged by hail and wind storms in the area on or about April 25, 2016. Plaintiff's wife, Rebecca Alvarez ("Mrs. Alvarez"), first noticed the damage and reported it to State Farm on February 27, 2018. That same day, the State Farm adjuster assigned to the Alvarez's claim, Gilbert Santos ("Santos") contacted Mrs. Alvarez to set up an inspection of the reported damage. Mrs. Alvarez asked Santos to meet with Oscar Mendoza of Clay Experts Roofing ("Mendoza") who had installed the roof originally. Santos called Mendoza that day, and scheduled the inspection of the Alvarez roof for March 1, 2018.

---

[1] Under the local rules, submissions on a motion beyond a response and reply are not allowed absent leave of court. Local Rule CV-7(f)(1). Plaintiff filed a sur-reply to State Farm's reply without requesting or being granted leave of this Court to do so. *See* ECF No. 38. Accordingly, the Court will not consider Plaintiff's Sur-Reply.

1

During the March 1 inspection, Santos, another State Farm representative, Mendoza, and one of his coworkers from Clay Experts Roofing were present. Pl.'s Resp. to Def.'s Mot. for Summ. J. ("Pl.'s Resp."), Ex. A-6, ECF No. 36-7. Santos did not identify any wind or hail damage to the roof. He observed "many damaged clay tiles," and noted that the "damage to the tile is not consistent with wind or hail." *Id.* Santos "[d]etermined that cracks on the tiles begin on the upper left corner of the tiles," "start at the nail fastener and then work[] down or down and across the tile." *Id.* He "[n]oted no spatter on tile or exterior elevations," but did note "mech damage to furnace caps that is not the result of hail." *Id.* Santos reviewed his findings with Mrs. Alvarez (with Mendoza also present). Santos showed Mrs. Alvarez photos to explain how he reached his conclusions. He recommended that the Alvarezes "contact the tile manufacturer or distributor of the tile to address uniform damage to the tiles" based on the damage he observed. Mrs. Alvarez "expressed understanding" but then had to leave before Santos could draft his letter describing the results of the inspection, so he left the letter at the front door when he finished writing it. *Id.*

The claim denial letter Santos wrote and issued to the Alvarezes, dated March 1, 2018, concludes that the damage Santos observed to the roof tiles was "caused by inherent vice and/or latent defect of the tile." Pl.'s Resp., Ex. A-2 at 1. The letter states that Santos's inspection "revealed no accidental direct physical damage to the clay tile roof," but did reveal "rusted fastners [sic] and wear, tear and/or deterioration of the roof" as well as "evidence of inherent vice and/or latent defect of the tile." *Id.* The letter concludes that "[b]ecause this loss falls within the insurance policy's exclusionary language, [State Farm is] unable to make payment" for any of the damage described therein, citing the relevant provisions of the policy. *Id.* at 2. The letter also states that "[b]efore reaching this decision, we conducted a reasonable

investigation and considered all information provided to us," and instructs the reader that "If there is information you think was not considered, please submit it to me for review." *Id.* Other than a check for $370.00 to replace a tile that was damaged by a State Farm representative during the inspection, State Farm made no payments to the Alvarezes as a result of their claim.

After the March 1 inspection and denial letter, the Alvarezes hired Ricky McGraw of McGraw Property Solutions ("McGraw") to estimate the cost of repairing the damage to their roof. On April 13, 2018, McGraw emailed State Farm an estimate for a complete replacement of the Alvarez's roof totaling $289,404.93. Pl.'s Resp., Ex. A-4. McGraw called State Farm to discuss the Alvarez's claim, and he and Santos spoke about the claim. McGraw indicated he believed that wind and hail had caused the damage to the Alvarez's roof. Santos then hired ProNet Group, Inc., to inspect the roof and provide an opinion as to the cause of the damage.

Armando Selva of ProNet ("Selva"), a professional engineer, delivered his report to Santos on May 25, 2018. Selva concluded that the cracked and broken roof tiles on the Alvarez roof were the result of deficient installation means and methods, corroded tile nails, expansion and contraction of the tiles, and foot traffic. Selva also noted dents on the roof vent caps on the Alvarez roof, and concluded that the dents were caused by hail but were cosmetic and did not result in any functional damage to the roof vents. Selva observed indentations on exterior window accents and trim on the Alvarez home, but concluded that these were the result of manufacturing and/or construction defects, not hailstone impacts.

State Farm called Plaintiff to explain ProNet's findings and issued a second denial letter dated June 5, 2018. The letter includes an estimate to replace four roof vent caps which totaled $460.93. That estimate fell below Plaintiff's deductible under the policy ($25,324), so State Farm made no payment for the damaged roof vent caps.

Plaintiff sent State Farm a demand letter and covered damages estimate totaling $264,080 on July 30, 2018. Def.'s Mot. for Summ. J., Ex. B-4, R. Alvarez Dep. 54:18-23. State Farm still made no payment to the Alvarezes for the claimed damage. Plaintiff filed the instant lawsuit on October 9, 2018.

## DISCUSSION

### I. Summary Judgment Standard

A court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the non-moving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the non-movant's claim or defense. *Lavespere v. Niagara Machine & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990).

If the movant carries its initial burden, the burden shifts to the non-movant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). The nonmoving party must "go beyond the pleadings" and designate competent summary judgment evidence "showing that there is a genuine issue for trial." *Adams*, 465 F.3d at 164; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986).

The parties may satisfy their respective burdens by tendering depositions, affidavits, and other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Mere conclusory allegations, unsubstantiated assertions, improbable inferences, unsupported speculation, and hearsay evidence (unless within a recognized exception) are not competent summary judgment evidence. *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005) (citing *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994); *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995)).

"A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009). A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). In other words, for a court to conclude there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the non-movant. *Anderson*, 477 U.S. at 242.

In making this determination, a court must view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005). The court should review all the evidence in the record, giving credence to the evidence favoring the non-movant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Id.* at 150; *Anderson*, 477 U.S. at 254–55. "Credibility determinations, the weighing of the evidence, and

the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.*, 477 U.S. at 255; *International Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th Cir. 1990) ("[T]he court must review all of the evidence in the record but make no credibility determinations or weigh any evidence.")

## II. Analysis

Plaintiff brings three extra-contractual claims against State Farm: (1) violations of the Texas Deceptive Trade Practices Act ("DTPA") and its tie-in statutes, (2) violations of the Texas Insurance Code, and (3) breach of the common law duty of good faith and fair dealing. State Farm argues that it is entitled to summary judgment on all three of these claims because Plaintiff cannot show that State Farm acted unreasonably. Plaintiff responds that reasonableness is a question of fact for the jury, and that he has produced sufficient evidence that State Farm acted unreasonably in its denial of his claim.

Plaintiff's extra-contractual claims all share the same predicate for recovery: a showing of common law bad faith. *See Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002). Under Texas law, an insurer will not be faced with a tort suit predicated on bad faith (under either common law or statute) for challenging a claim of coverage if there was any reasonable basis for denial of that coverage. *Id.*; *see also Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 459 (5th Cir. 1997). Thus, for a plaintiff to prevail on a bad faith claim, "the insured must establish the absence of a reasonable basis for denying or delaying payment of the claim and that the insurer knew, or should have known, that there was no reasonable basis for denying or delaying payment of the claim." *Id.* Put another way, the "insured must prove that there were no facts before the insurer which, if believed, would justify denial of the claim." *Id.* (citing *State Farm Lloyds Inc. v. Polasek*, 847 S.W.2d 279, 284

(Tex.App.—San Antonio 1992, writ denied)). Texas courts have consistently held that a bona fide coverage dispute is not evidence of an insurer's unreasonableness; to the contrary, a "bona fide controversy is sufficient reason for failure of an insurer to make a prompt payment of a loss claim." *Higginbotham*, 103 F.3d at 459. "As long as the insurer has a reasonable basis to deny or delay payment of a claim, even if that basis is eventually determined by the fact finder to be erroneous, the insurer is not liable for the tort of bad faith." *Id.* (citing *Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 600 (Tex. 1993)).

Contrary to Plaintiff's claim, courts routinely determine as a matter of law that undisputed record evidence establishes an insurer had a reasonable basis for denying or delaying a claim payment.[2] *See Soto v. Lloyds*, No. 5:15-CV-86, 2016 WL 6883174, at *5 (S.D. Tex. Aug. 19, 2016) ("an insurer may establish its right to summary judgment by showing that there is 'no more than a good faith dispute' as to coverage.") In *Higginbotham*, the insurer denied the plaintiff's claim related to his stolen car because their investigation revealed suspicions that the plaintiff himself may have been involved in the car theft. *Higginbotham*, 103 F.3d at 459. The plaintiff argued the insurer conducted a targeted investigation to make him look like an accomplice, and cited case law where an insurer's "outcome determinative" investigation constituted bad faith. *Id.* The Fifth Circuit reasoned that "none of the facts Higginbotham presents contradicts the facts set out above" which the insurer had relied on to deny his claim,

---

[2] Plaintiff urges that the Texas Supreme Court has stated that it "reject[s] the suggestion that whether an insurer's liability has become reasonably clear presents a question of law for the court rather than a fact issue for the jury." Plaintiff erroneously attributes this quote to *Choate v. San Antonio & A.P. Ry.*, a Texas Supreme Court decision from 1898, when in reality it is found in the decision of *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex. 1997). Regardless, Plaintiff mischaracterizes the reach of that statement, as the *Universe Life* opinion immediately acknowledges that "[a] court may be entitled to decide an issue as a matter of law when there is no conflict in the evidence, but when there is evidence on either side, the issue is a fact question." *Id.* Courts routinely decide on summary judgment that an insured has failed to present evidence sufficient to support a bad faith claim. *See Jasso v. State Farm Lloyds*, No. 1:15-CV-203, 2018 WL 2323290, at *3 (S.D. Tex. Mar. 28, 2018), *report and recommendation adopted*, No. 1:15-CV-203, 2018 WL 2013079 (S.D. Tex. Apr. 30, 2018) ("Nevertheless, if the insured fails to produce evidence indicating that the insurer's decision was unreasonable, summary judgment may issue.") (collecting cases).

7

and that the insurer's investigation produced "enough evidence to give State Farm a reason to look twice and reasonably deny Higginbotham's claim." *Id.* at 460. The appeals court went on to explain that whether or not the facts the insurer relied upon to deny a claim ended up being true was beside the point:

> We are far from pointing fingers and claiming that Higginbotham was actually an accomplice in stealing his car, but given the undisputed facts set out in the record, State Farm had a reasonable basis to dispute the validity of Higginbotham's claim. There was a bona fide dispute between the parties which justified State Farm's failure to pay Higginbotham. As a matter of law, State Farm did not act in bad faith.

*Id.*

The result is the same here. State Farm has pointed to undisputed facts in the record to establish a reasonable basis to deny Plaintiff's claim, which State Farm relied on in denying the claim, creating a bona fide coverage dispute. State Farm promptly responded to the Alvarezes' claim by sending Santos—an experienced adjuster—to inspect their roof. The adjuster met and conducted the investigation with the third-party roofing installer, Mendoza, who was not affiliated with State Farm in any way, as requested by Plaintiff. Based on the March 1 inspection and report, Santos concluded that the damage to the roof was not covered by the policy, and accordingly denied the claim. When, over a month later, State Farm received the McGraw estimate, Santos called him and discovered that he thought the damage was caused by hail and wind. Because of this, Santos hired an engineer to conduct yet another inspection of the roof and give his opinion on causation. The ProNet engineer, Selva, also concluded there was no hail or wind damage to the Alvarez roof, except for the four damaged roof vent caps. Unlike Santos, Selva thought the roof vent cap damage was caused by hail. After Selva issued his report on May 25, 2018, State Farm produced an estimate for replacing the roof vent caps, and that

8

estimate ($460.93) was below Plaintiff's policy deductible ($25,324). Based on these findings, State Farm issued a second denial letter on June 5, 2018.

These facts establish a reasonable basis for State Farm's denial of Plaintiff's insurance claim, and as in *Higginbotham*, Plaintiff does not dispute them. Instead, Plaintiff merely points to facts that constitute a bona fide coverage dispute. Plaintiff claims that State Farm was unreasonable in sending Santos to adjust their claim because he was not qualified to evaluate their particular type of roofing system, and because he "fully denied Plaintiff's claim without seeing all the damages on Plaintiff's roof and then [drove] away." Pl.'s Resp. at 7. The undisputed record evidence shows otherwise: that Santos is an experienced adjuster who regularly inspects residential properties for covered damage (including weather-related tile damage); that he complied with the Alvarezes' request to contact Mendoza, who originally installed the tile roof; that he conducted the inspection with both Mendoza and Mrs. Alvarez present; and that he took the time to discuss his findings with Mrs. Alvarez before she had to leave the property. Plaintiff's contention that Santos "had no idea what caused the damages he had no experience with" is a mere conclusory statement and does not undermine State Farm's reliance on Santos's inspection to deny coverage.

Plaintiff also takes issue with Santos "leav[ing] covered hail damage" (meaning the damage to four roof vent caps) "unaddressed in his March 1, 2018 denial letter." Pl.'s Resp. at 7. But the record again belies this claim, because Santos believed that the damage to the roof vent caps—like the damage to the roof tiles—was not caused by hail, and accordingly advised that there was no covered damage in his denial letter. It was not until State Farm hired ProNet to conduct an additional inspection, and Selva concluded that the roof vent cap damage <u>was</u> caused by hail, that State Farm was aware of any hail damage to the Alvarez roof. At that point, after

9

Selva delivered his report to State Farm on May 25, 2018, State Farm promptly estimated the cost of replacing the roof vent caps, concluded it was below Plaintiff's deductible, and notified the Alvarezes of the same in a second denial letter dated June 5, 2018.

The undisputed facts establish that State Farm conducted a reasonable investigation into Plaintiff's claim. The fact that qualified experts on each side of this case disagree about whether the damage to the Alvarez roof was caused by hail and wind is further evidence that this case is, at heart, a bona fide coverage dispute, not one of bad faith. Even if a jury eventually sides with Plaintiff and finds the damage was caused by hail, "the insurer is not liable for the tort of bad faith" so long as the insurer had a reasonable basis for denying the claim at the time of the denial. *See Higginbotham*, 103 F.3d at 459 (citing *Lyons*, 866 S.W.2d at 600). Plaintiff's and Mrs. Alvarez's own testimony also illustrates that this case does not rise above a bona fide coverage dispute: both Alvarezes testified that, other than disagreeing with State Farm's coverage decision, they have no reason to believe State Farm acted unreasonably. Because Plaintiff raises no genuine disputes of material fact to "establish the absence of a reasonable basis for denying or delaying payment of the claim," State Farm is entitled to summary judgment on Plaintiff's extra-contractual claims. *Higginbotham*, 103 F.3d at 459. Since the reasonableness inquiry is dispositive of all of Plaintiff's extra-contractual claims, the Court need not address the other bases State Farm put forward for summary judgment.[3]

## CONCLUSION

For the reasons stated herein, State Farm's Motion for Summary Judgment Regarding Extra-Contractual Claims (ECF No. 35) is **GRANTED**. Plaintiff's extra-contractual claims for violations of the DTPA and its tie-in statutes, violations of the Texas Insurance Code, and breach

---

[3] State Farm has moved for summary judgment as to Plaintiff's claim for multiple damages. Plaintiff claims he is entitled to multiple damages under provisions of the DTPA and Texas Insurance Code. Because the Court grants summary judgment as to Plaintiff's DTPA and Texas Insurance Code claims, the issue of multiple damages is moot.

of the common law duty of good faith and fair dealing are **DISMISSED**. Plaintiff's claim for breach of contract remains.

    **SIGNED** this 2nd day of March, 2020.

                                      XAVIER RODRIGUEZ
                                      UNITED STATES DISTRICT JUDGE